# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| **DONNA LEE BOYCOTT,** | ) | |
| | ) | **Case No. 11 CV 4162** |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Magistrate Judge Young B. Kim** |
| | ) | |
| **MICHAEL J. ASTRUE,** | ) | |
| **Commissioner of Social Security,** | ) | |
| | ) | **May 21, 2012** |
| **Defendant.** | ) | |

## MEMORANDUM OPINION and ORDER

Donna Lee Boycott applied for Social Security disability benefits ("DIB") and supplemental security income ("SSI") under the Social Security Act ("Act"), 42 U.S.C. §§ 416 and 423, claiming that her obesity and disorders of the back preclude her from working. An administrative law judge ("ALJ") concluded that Boycott's impairments are severe but not disabling. The ALJ denied Boycott's application for benefits—a decision Boycott challenges in the current motion for summary judgment. For the following reasons, Boycott's motion is granted insofar as it requests a remand and the Commissioner's motion for summary judgment is denied:

### Procedural History

Boycott applied for SSI and DIB in 2008, claiming that she became disabled on September 1, 2007. (Administrative Record ("A.R."), 36, 123.) The Commissioner denied her disability claim initially and upon reconsideration. (Id. at 59-62, 65.) Boycott requested,

and was granted, a hearing before an ALJ. (Id. at 73-74.) After conducting a hearing, the ALJ determined that Boycott was not "disabled" within the meaning of the Act. (Id. at 40-53.) After requesting review before the Appeals Council, Boycott submitted new evidence in support of her claim. (Id. at 218-23, 253-63.) When the Appeals Council denied review, (id. at 1-3), the ALJ's decision became the final decision of the Commissioner. *See Schmidt v. Astrue*, 496 F.3d 833, 841 (7th Cir. 2007). Boycott then filed the current suit seeking judicial review of the ALJ's decision. *See* 42 U.S.C. § 405(g). The parties have consented to the jurisdiction of this court. *See* 28 U.S.C. § 636(c).

**Facts**

Boycott was over the age of 55 when she applied for benefits. (A.R. 132). Boycott claims that she is disabled due to obesity and disorders of the back. (Id. at 36.) She also claims to suffer from osteoarthritis. (Id. at 156.) When she appeared before the ALJ, she weighed 290 pounds at a height of 5'8". (Id. at 14.) She testified that she can walk only a few feet and only if she "hang[s] on to something," due to problems with balance. (Id. at 16-17.) Still, she tries to do without a cane. (Id. at 17.) She can stand for "10 minutes, 15 minutes" at a time before pain in her knees causes her to sit. (Id.) She can sit for about a half-hour in a soft chair (id. at 17), and can sit for "[m]aybe 15 minutes at a crack" to use a computer (id. at 20). She complains of difficulties in reaching overhead due to rotator cuff problems. (Id.) On damp days, the arthritis in her hands makes it hard for her to "lift things" or "do very much." (Id. at 18.) She takes over-the-counter ibuprofen for pain every day and

feels worse on the 15 days a month or more that the weather is damp.  (Id. at 25-26.)  She drives a car a couple of times a week and is able to load the washing machine, dress herself, make her bed, though slowly, and load the dishwasher if she "hang[s] onto the counter."  (Id. at 19, 21).

Boycott worked as an office manager for Dr. Michael Skaredoff from March 1993 until he closed his office in September 2005.  (A.R. 15-16, 24, 259.)  As an office manager, Boycott greeted patients, gave them their paperwork, helped them onto the examination table, occasionally held their hands or let them lean against her during procedures, typed forms, and occasionally slid boxes weighing up to 50 pounds on the floor.  (Id. at 22-23.)  At the hearing, she testified that she would no longer be able to perform the job because of pain in her lower back; specifically, she would not be able to move boxes or sit at the desk "for any length of time."  (Id. at 23.)

Other than visits to a doctor between the late 1970s and early 1990s, Boycott did not formally consult a doctor regarding her pain or obesity before applying for benefits.  (Id. at 158-159.)  Rather, the doctor that she worked for "sort of" treated her as needed.  (Id. at 23-24.)  Dr. Skaredoff did not maintain a file on her or prescribe medications for her.  (Id. at 23-24, 159.)  He gave her "samples from the office" for her pain from osteoarthritis.  (Id. at 159.)  After Dr. Skaredoff closed his office, her condition deteriorated, she maintains, though she did not consult a doctor for treatment.  (Id. at 24).  As a result, Boycott did not have any medical evidence to submit in support of her application for benefits.

The state agency sent Boycott to an internist, Dr. Anand Lal, for an evaluation.  (Id. at 228-35.)  In April 2008, Dr. Lal performed a physical evaluation, neurological evaluation, mental status evaluation, and a musculoskeletal evaluation that included a battery of range of motion testing.  (Id.)  He concluded that the "range of motion is generally limited in all the joints due to her size."  (Id. at 230.)  He also noted that Boycott's grip strength was "only about 3/5 power."  (Id.)  He commented that her "wrists were fine with no swelling noted.  The finger motion is normal."  (Id.)  He remarked that there "was soft tissue swelling and huge thighs and calves were noted in proportion to her obesity.  There was no atrophy noted." (Id. at 230-31.)  He also observed that Boycott walked without a cane.  (Id. at 231.) Regarding Boycott's cooperation during the exam, Dr. Lal wrote that "[w]hen I tried to help her lift, she was pressing down rather than going up. . . .  The claimant was appropriate, polite, pleasant but not very well motivated to perform the testing, but could well be from the pain she was having."  (Id.)  He concluded his report with his "impression" identifying the following six problems: (1) morbid exogenous obesity; (2) low back pain; (3) history of sacroiliitis; (4) history of mid-gluteal pain; (5) pain in both shoulders; (6) osteoarthritis of both knees and possibly both hips.  (Id.)

The next month, Dr. Virgilio Pilapil, a medical consultant retained by the state agency, relied on Dr. Lal's evaluation to assess Boycott's physical residual functional capacity ("RFC").  (Id. at 236-43.)  Dr. Pilapil concluded that Boycott could occasionally lift 20 pounds, frequently lift 10 pounds, "stand and/or walk (with normal breaks) for a total of . . .

about 6 hours in an 8-hour workday," and sit for about 6 hours in an 8-hour workday. (Id. at 237.) Dr. Pilapil explained that he based his conclusions on Boycott's BMI of 49, Dr. Lal's observation of Boycott's ability to walk unassisted, her unremarkable neurological exam and her reduced range of motion due to obesity. (Id.) Dr. Pilapil questioned the credibility of Boycott's reduced grip strength for two reasons: (1) the objective exam did not support this finding; and (2) Dr. Lal had noted that Boycott had exhibited some uncooperative behavior during the exam and had pushed against him when he tried to help her lift. (Id. at 243.)

In September 2008, Dr. Vidya Madala performed another RFC assessment and, like Dr. Pilapil, relied on Dr. Lal's evaluation as the basis for the assessment. (Id. at 244-51.) Like Dr. Pilapil, Dr. Madala registered some credibility concerns stemming from Boycott's lack of cooperation during Dr. Lal's exam. (Id. at 249.) Dr. Madala also noted that Boycott walked unassisted. (Id. at 246.) Dr. Madala's RFC varied from Dr. Pilapil's in one key respect: she opined that Boycott is limited to standing and/or walking, with normal breaks, for a total of two hours in an eight-hour workday. (Id. at 245.)

Later that month, a vocational expert ("VE"), Sandra Garlin, used Dr. Madala's RFC assessment to formulate Boycott's vocational assessment. (Id. at 183.) Garlin opined that "the claimant is limited to the lifting and carrying capacity generally associated with the ability for light work, but that the claimant cannot walk and stand for 6 hours per 8-hour workday. Therefore, [the] ability for sedentary work must be considered." (Id.) Garlin

5

concluded that Boycott's restricted abilities to climb, stoop, kneel, crouch, crawl, and reach with her right arm precluded her from performing her past work as she described it. (Id.) Specifically, Garlin found that Boycott is no longer able to push a large box across the floor. (Id.) Garlin further opined that Boycott's former job closely resembled that of an office manager of any industry, a job that, as described within the dictionary of occupational titles, was within Boycott's RFC. (Id.) Upon reviewing Garlin's assessment, Boycott requested that the Commissioner order x-rays of her lower back, hips, knees, shoulders and hands. (Id. at 212-213.) These x-rays were not ordered.

At the hearing before the ALJ, another VE testified regarding Boycott's past work and abilities. (Id. at 27-34.) The VE opined that Boycott's past work as a receptionist or office manager at a doctor's office is described as "light" in the DOT (Dictionary of Occupational Titles), but that Boycott's job, as she performed it, was "medium." (Id. at 27-28.) The VE commented that Boycott's transferrable skills would enable her to serve as a receptionist, information clerk or customer service representative, which are all classified as sedentary jobs. (Id. at 28.) The ALJ then asked the VE to consider a hypothetical individual with Boycott's age, education, and work experience that is capable of lifting 20 pounds occasionally and 10 pounds frequently, standing, sitting and/or walking a total of six hours during an eight-hour day, and other limitations. The VE testified that this hypothetical individual would be capable of the occupations she previously listed in addition to the following additional sedentary positions: general office clerk, claims clerk, and order clerk.

(Id. at 29-30.)  The VE then commented that the hypothetical individual would be capable of working as a receptionist in a doctor's office, again classified as sedentary.  (Id. at 30.) The ALJ then modified one element of the hypothetical: she asked the VE to consider whether the hypothetical individual would be able to perform those occupations if she were limited to standing and/or walking a total of two hours during an eight-hour day.  (Id.) Again, the VE testified that the hypothetical individual would be capable of performing the jobs previously discussed because they are all sedentary positions.  (Id.)  Responding to questions from Boycott's attorney, the VE further testified that Boycott's past work, as described in the DOT, is "done at a light and sedentary level."  (Id. at 31.)  She confirmed that a person who missed 15 days of work a month would be unemployable (id. at 33), and that if the individual "can make occasional use of her hands," it would "diminish" the available jobs by "50 percent" (id. at 34).

After considering the evidence, the ALJ concluded that Boycott is not disabled.  (Id. at 43-39.)  The ALJ applied the standard five-step sequence, *see* 20 C.F.R. § 404.1520(a), which required her to analyze the following:

> (1) whether the claimant is currently [un]employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the [Commissioner], see 20 C.F.R. § 404, Subpt. P, App. 1; (4) whether the claimant can perform her past work; and (5) whether the claimant is capable of performing work in the national economy.

*Clifford v. Apfel,* 227 F.3d 863, 868 (7th Cir. 2000) (quoting *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir.1995)).  If at step three, the ALJ finds that the claimant has a severe impairment

which does not meet the listings, she must "assess and make a finding about [the claimant's RFC] based on all the relevant medical and other evidence" before moving to step four. 20 C.F.R. § 404.1520(e). The ALJ then uses the RFC to determine at steps four and five whether the claimant can return to her past work or to different available work. 20 C.F.R. § 404.1520(e)-(g).

Here, at steps one and two of the analysis, the ALJ determined that Boycott had not engaged in substantial gainful activity since September 1, 2007, the alleged onset date, and that she has two severe impairments: generalized osteoarthritis and obesity. (A.R. 45.) The ALJ noted that Boycott's obesity complicates her osteoarthritis, stating that "someone with obesity and arthritis affecting a weight-bearing joint may have more pain and limitation than might be expected from the arthritis alone." (Id. at 45, citing S.S.R. 02-1p, 2000 WL 628049.) The ALJ may have believed Boycott's obesity to be more severe than it is, as she noted Boycott's height as 5 feet, 4 inches— four inches shorter than Boycott's actual height. (Id. at 14, 45.) Still, she concluded at step three that Boycott's impairments do not meet or equal the criteria of the listed impairments. (Id. at 46.) The ALJ described Boycott's RFC as the capacity for "light work . . . except she can occasionally push/pull using lower extremities. She can do occasional climbing, stooping, crouching, kneeling, bending, and crawling. She can frequently balance. She can reach overhead occasionally . . . [s]he must avoid exposure to cold temperatures and work hazards." (Id.) In reaching that determination, the ALJ relied on Boycott's testimony, Dr. Lal's report, to which she ascribed

"great weight," and on Dr. Madala's RFC assessment, which the ALJ misstated. (Id. at 47-48.) Citing Dr. Madala's assessment, the ALJ stated that, "[t]he State Agency concluded that Ms. Boycott retains the physical [RFC] for light work with limited use of lower extremities for pushing and/or pulling," (id. at 47), though Dr. Madala's report actually limited Boycott to standing and/or walking "at least 2 hours in an 8-hour workday"—a limitation associated with sedentary work, a classification that is less demanding than light work. *See* 20 C.F.R. § 404.1567(b); *see also* S.S.R. 83-10, 1983 WL 31251 *5. This RFC finding reflected concerns about Boycott's credibility, which the ALJ communicated through the following hackneyed and often criticized boilerplate: Boycott's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent that they are inconsistent with the above [RFC] assessment." (A.R. 47.) At step four, the ALJ concluded that Boycott is capable of performing her past relevant work as an office manager and receptionist because those jobs, as performed in the economy, are classified as light and sedentary, respectively. (Id. at 48.) Thus, the ALJ concluded that Boycott is not disabled. (Id. at 49.)

### Analysis

Boycott is entitled to a remand of this case for further proceedings. Boycott argues that the Commissioner's decision is deficient in six respects. Her primary challenge is to the ALJ's RFC assessment, which she argues is not supported by substantial evidence because

it is premised on an incomplete—and therefore erroneous—version of Dr. Madala's RFC assessment. She also challenges the ALJ's credibility finding, the ALJ's refusal to order the additional medical tests that she requested and the ALJ's alleged failure to consider the entire record, including the impact of Boycott's obesity on her osteoarthritis. Boycott also argues that she is entitled to a remand of her case because new and material evidence supports her claim of disability.

This court reviews the Commissioner's decision to ensure that it is supported by substantial evidence, *see* 42 U.S.C. § 405(g); *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010), and confines its review to the rationales offered by the ALJ. *Shauger v. Astrue*, No. 11-3232, 2012 WL 992100, at *8 (7th Cir. March 22, 2012). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 399-400 (1971). This court will not "reweigh the evidence, resolve conflicts, decide questions of credibility, or substitute [its] own judgment for that of the Commissioner." *Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000).

## A.     RFC Assessment

Boycott's primary argument is that the ALJ's RFC assessment—that Boycott is capable of light work, with certain exertional limitations—is not supported by substantial evidence because it is based on a truncated, incomplete version of Dr. Madala's RFC assessment. The Commissioner agrees that the ALJ omitted a key limitation from

Dr. Madala's RFC assessment when she formulated her own. (R. 16, Def.'s Mem. in Support of Mot. for Summ. Judg. at 4) ("Dr. Madala found that Boycott could stand and walk for only two hours in an eight-hour work day, but the ALJ omitted this limitation from her RFC assessment."). Dr. Madala opined that Boycott is capable of standing and/or walking "at least 2 hours in an 8-hour workday." (A.R. 245.) Dr. Madala selected the two-hour restriction from the following choices presented by the RFC assessment form: "less than 2 hours in an 8-hour workday," "at least 2 hours in an 8-hour workday," or "about 6 hours in an 8-hour workday." (Id. at 245.) The two-hour classification that Dr. Madala chose correlates with "sedentary work" under 20 C.F.R. § 404.1567(a). But the ALJ did not limit Boycott to sedentary work. Rather, the ALJ concluded that Boycott is capable of "light work," which is a classification of jobs that "require[] a good deal of walking or standing." See 20 C.F.R. § 404.1567(b). The Commissioner's regulations explain that light work may require "a total of approximately 6 hours of an 8-hour workday." S.S.R. 83-10, 1983 WL 31251 *6.

The ALJ's opinion that Boycott retains the RFC for light work is largely based on the ALJ's misstated version of Dr. Madala's opinion and it is therefore possible, and indeed likely, that the ALJ did not realize that Dr. Madala had actually limited Boycott to sedentary work. While the ALJ was not required to follow Dr. Madala's opinion, see McKinzey v. Astrue, 641 F.3d 884, 891 (7th Cir. 2011), the ALJ was required to "consider and evaluate" Dr. Madala's opinion in its entirety, see S.S.R. 96-6p, 1996 WL 374180 *4. Here, because

the ALJ provided no explanation for her omission—or rejection—of a crucial element of Dr. Madala's RFC assessment, this court is concerned that she did not give Dr. Madala's opinion proper consideration. This court "cannot uphold an administrative decision that fails to mention highly pertinent evidence, or that because of . . . misstating premises fails to build a logical bridge between the facts of the case and the outcome." *Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010) (citations omitted). The ALJ's failure to accurately characterize Dr. Madala's opinion was an error.

But an administrative error may be harmless, and this court will not remand Boycott's case if "it is predictable with great confidence that the agency will reinstate its decision on remand." *Spiva v. Astrue*, 628 F.3d 346, 353 (7th Cir. 2010). To determine whether the error was harmless, this court must consider whether a "review of the record[] convinces us that no reasonable ALJ would reach a contrary decision on remand" regarding Boycott's capacity for light work. *McKinzey*, 641 F.3d at 892. If the ALJ's "decision is overwhelmingly supported by the record though the agency's original opinion failed to marshal that support, then remanding is a waste of time." *Spiva*, 628 F.3d at 353.

The record lends support to the ALJ's conclusion that Boycott is capable of light work, but it also supports the contrary conclusion that she is limited to sedentary work. The following record evidence supports Boycott's argument that she is limited to sedentary work: Dr. Madala's (complete) RFC assessment, which limits Boycott to sedentary work; Garlin's vocational assessment of Boycott, which limits Boycott to sedentary work (id. at 183); and

Boycott's testimony, if believed, that she can stand only for ten to fifteen minutes at a time and walk only a few feet at a time (id at 16). On the other hand, other record evidence supports the Commissioner's view that Boycott is capable of light work, including Dr. Pilapil's RFC assessment that indicated that Boycott can stand for up to six hours a day (id. at 237), and the ALJ's well-supported credibility concerns, described below. Whether on remand the ALJ would conclude that Boycott is capable of performing light work is not obvious, so this court cannot confidently conclude that remanding "would serve no purpose." *See McKinzey,* 641 F.3d at 892.

The Commissioner argues that regardless of the RFC error, a remand would be pointless because any reasonable ALJ would conclude that Boycott is capable of performing her past work as it is generally performed in the national economy—which the Commissioner claims is at the sedentary level. As the Commissioner correctly points out, a claimant is not disabled if she "retains the capacity to perform the functional demands and job duties of the job as ordinarily required by employers throughout the national economy." S.S.R. 82-61, 1982 WL 31387 *2. But the evidence does not unequivocally show that Boycott's past work, as it is generally performed in the national economy, is classified as sedentary. To the contrary, the VE testified that Boycott's past work fits the descriptions of office manager or receptionist at a doctor's office, and she described the office manager position as generally performed at the light level. (A.R. 27-28.) In contrast, the medical office receptionist position can be performed by someone limited to sedentary work, according to the VE. (Id.

13

at 29-30.)   She further confirmed that Boycott's past work as performed in the general economy is "done at a light and sedentary level."  (Id. at 31.)   The ALJ summarized this testimony but did not decide whether Boycott's past work as generally performed is most accurately classified as light or sedentary.  (Id. at 48.)   The ALJ likely sidestepped this determination because she had concluded, perhaps erroneously, that Boycott is capable of light work.  But this determination is crucial to Boycott's claim because if her past work as generally performed is most accurately characterized as light work, and if Boycott's RFC is for sedentary work, then federal regulations would compel a finding that she is disabled due to her advanced age. *See* 20 C.F.R. § 404.1520; *see also* 20 C.F.R. § 404.1568(d)(4).  The Commissioner concedes that 20 C.F.R. § 404.1568(d)(4) would dictate a finding of disability if Boycott is limited to sedentary work and cannot perform her past work.  (R. 16, Def.'s Mem. in Support of Mot. for Summ. Judg. at 7 n.2.)

Based on the conflicting record regarding the appropriate classification of Boycott's past work, this court is not convinced that a reasonable ALJ would be compelled to conclude that Boycott's past work, as generally performed in the national economy, is within her capacity.  This court does not decide whether Boycott is entitled to benefits.  Maybe she is overstating her condition and will be found to be capable of light work.  It is also possible that the ALJ will conclude that her past work is generally performed at the sedentary level, which she seems to concede is within her capability.  "But an administrative agency's decision cannot be upheld when the reasoning process employed by the decision maker

exhibits deep logical flaws . . . even if those flaws might be dissipated by a fuller and more exact engagement with the facts." *Carradine v. Barnhart*, 360 F.3d 751, 756 (7th Cir. 2004).[1]

## B. Boycott's Credibility

Turning to the ALJ's credibility assessment, which "will not be overturned unless [it is] 'patently wrong,'" *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001), this court notes with concern that the ALJ initially expressed her doubts about Boycott's credibility through the boilerplate "template" that has been repeatedly criticized by the Seventh Circuit. This boilerplate, which states that Boycott's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent that they are inconsistent with the above residual functional capacity assessment," (A.R. 47), has been described as "opaque," *Bjornson v. Astrue*, 671 F.3d 640, 644-45 (7th Cir. 2012), "meaningless," and is "seen frequently in decisions from ALJs" despite complaint that it precludes meaningful review. *See Shauger*, 2012 WL 992100, at *4, citing *Bjornson*, 671 F.3d at 644-45 and *Parker*, 597 F.3d at 921-22. The ALJ included this boilerplate statement after summarizing Boycott's testimony, but before any discussion of the medical or other record evidence, suggesting that the ALJ may have drawn conclusions

---

[1] This court need not reach Boycott's argument that the ALJ's misstatement of Dr. Madala's opinion resulted in a failure to consider the entire record because this court remands Boycott's case for a new RFC determination.

about Boycott's credibility before considering whether the medical evidence, scarce as it is, substantiated her claims.  The ALJ discussed the following facts as support for this adverse credibility assessment: (1) Boycott did not stop working due to medical reasons; (2) despite complaining of 15 or more "bad days" per month, for which she provided no supporting documentation, she had not consulted a doctor in a formal way in 15 years; (3) the doctor she worked for who allegedly provided care for her had kept no records, ordered no x-rays or other diagnostic tests, prescribed no physical therapy nor medications; (4) Boycott drives and can perform some chores; and (5) Dr. Madala's RFC assessment suggests that Boycott is capable of doing more activities than she claims.  (Id. at 48.)  The ALJ also registered concerns about Dr. Lal's comments about Boycott's lack of motivation during testing and Boycott's demeanor at the hearing—her clutching of her purse and table during the administrative hearing—which suggested to the ALJ that Boycott had overstated her allegations of hand weakness.  (Id.)

The ALJ's credibility determination is suspect because of its reliance on the boilerplate.  However, Boycott did not develop this argument in her brief, and the Seventh Circuit has not yet held that the inclusion of the boilerplate, alone, justifies an automatic remand.  Rather, the standard of review remains that it "is only when the ALJ's determination lacks any explanation or support that we will declare it patently wrong, and deserving of reversal." *Elder v. Astrue*, 529 F.3d 408, 413-414 (7th Cir. 2008) (internal citations and quotations omitted).  This is a "strict standard for reversal." *Carradine*, 360

F.3d at 758. Credibility assessments are accorded "special deference because the ALJ is in the best position to see and hear the witness and determine credibility." *Shramek v. Apfel*, 226 F.3d 809, 811 (7th Cir. 2000).

Boycott challenges the adverse credibility ruling on two grounds. First, Boycott argues that the ALJ erroneously discounted her credibility owing to her lack of formal medical treatment. Boycott suggests that the ALJ ought to have considered her relationship with her former employer—who maintained no medical file for her and prescribed no diagnostic tests or treatment—as a standard doctor-patient relationship. Boycott's informal doctor-patient relationship with her former employer did not generate any medical evidence of disability, and ALJs may consider the lack of medical evidence as probative of the claimant's credibility. *Powers v. Apfel*, 207 F.3d 431, 435 (7th Cir. 2000). Moreover, Boycott did not consult any doctor during the five years between her termination from employment and application for benefits. The Seventh Circuit has upheld adverse credibility rulings based on a claimant's failure to seek medical treatment when the claimant visited a doctor seven times during an eight year period—which is significantly more than Boycott's zero doctor visits over the five-year period between her 2005 termination from employment and her 2010 request for a prescription from her former employer. *See* A.R. 254; *Sienkiewicz v. Barnhart*, 409 F.3d 798, 804 (7th Cir. 2005). Here, Boycott's failure to submit medical evidence or pursue formal medical treatment was not the sole factor, but just one of the factors listed in 20 C.F.R. § 404.1529(c)(3) that the ALJ considered in her

credibility determination. *See Schmidt v. Barnhart*, 395 F.3d 737, 747 (7th Cir. 2005) (upholding an adverse credibility ruling that was premised in part on lack of objective medical evidence, when ALJ also discussed the claimant's lack of treatment or prescriptions at the time of the hearing, and also noted that the claimant's activities of daily living were not consistent with allegations of pain). It was not an error for the ALJ to have considered Boycott's failure to formally consult a doctor as one part of her credibility determination.

Next, Boycott argues that because the ALJ relied on a mistaken understanding of Dr. Madala's RFC assessment as evidence of Boycott's alleged overstatement of her pain, the adverse credibility determination cannot stand. In Boycott's view, Dr. Madala's opinion supports her allegations of pain—Dr. Madala opined that Boycott cannot perform the standing and/or walking required by light work—but this was lost on the ALJ because she mistakenly believed that Dr. Madala had found her capable of light work. Though Boycott is correct that Dr. Madala's conclusions regarding her limited capacities for standing and walking are supportive of her claim, Boycott ignores that the other limitations offered by Dr. Madala, and correctly cited by the ALJ, are not supportive of her claim. For example, Dr. Madala opined that Boycott can occasionally lift twenty pounds and frequently lift ten pounds, can occasionally climb, frequently balance, occasionally stoop, kneel, crouch, and crawl, frequently reach with her right arm, occasionally reach overhead with her right arm, and frequently handle with both hands. (A.R. 45-47, 245, 247.) Many of these opinions suggest that Boycott's capacity for movement exceeds the capacity that she described in her

18

testimony: for example, Boycott testified that she cannot balance, cannot use her hands on damp days, cannot reach overhead with either arm, and can lift no more than five pounds. (Id. at 17-18). Thus, Dr. Madala's opinion, in general, does not corroborate Boycott's allegations of pain. It was not an error for the ALJ to have considered Dr. Madala's report as one of many legitimate indicia of compromised credibility. Accordingly, because the ALJ considered many of the credibility factors provided by 20 C.F.R. § 404.1529 in reaching her credibility determination, this court finds it adequately supported to withstand review.

### C. Development of the Record

The day before her administrative hearing, Boycott requested that the ALJ order "x-rays of and reports on claimant's lower back, shoulders, knees, hips, and hands," (A.R. 213), on the ground that those tests would substantiate her claims of disability. The ALJ declined to order the tests. Boycott argues that the ALJ cannot conclude that "the objective evidence [is] insufficient to substantiate the severity of the symptoms and degree of functional limitations" if she also refuses to order additional medical testing. (R. 17, Pl.'s Reply at 5.) Boycott does not cite to any statement in the ALJ's opinion that suggests that she believed that additional evidence was necessary to properly evaluate Boycott's claim—nor was this court able to find any such indication in its own review of the ALJ's opinion. Thus, Boycott seems to be arguing that whenever an ALJ finds that the medical evidence does not corroborate a claimant's allegations, then the ALJ should order more tests if requested to do so.

Boycott's proposed standard conflicts with 20 C.F.R. § 404.1517, which states that if the claimant's medical evidence is insufficient to determine disability, then the Commissioner may request additional examinations or tests. Here, the Commissioner determined that Boycott's medical evidence was insufficient to determine disability, so he sent Boycott for a consultative examination with Dr. Lal, who performed a physical, neurological, and mental status examination that included a battery of range of motion testing. (A.R. 228-235.) The ALJ ascribed great weight to Dr. Lal's opinion, and in discussing it, did not communicate any concern that this medical evidence was insufficient to determine whether Boycott is disabled. (Id. at 47-48.) "If the ALJ is able to weigh the record evidence and determine whether the claimant is disabled based on that evidence, then [she] is not required to obtain additional evidence." *Smith v. Apfel*, 231 F.3d 433, 443 (7th Cir. 2000) (Ripple, J., dissenting, and citing *Henderson ex rel Henderson v. Apfel*, 179 F.3d 507, 513 (7th Cir. 1999)). A reviewing court "generally upholds the reasoned judgment of the Commissioner on how much evidence to gather," *Nelms v. Astrue*, 553 F.3d 1093, 1098 (7th Cir. 2009), and this court upholds the ALJ's decision in this regard.

### D. Consideration of Obesity

Boycott argues that the ALJ's analysis of her obesity did not meet the requirements of S.S.R. 02-1p, 2000 WL 628049. That ruling requires the ALJ to consider a claimant's obesity at several steps during the five-step process, *Skarbek v. Barnhart*, 390 F.3d 500, 504 (7th Cir. 2004), and counsels that BMIs greater than 40 pose "the greatest risk for developing obesity-

related impairments." In this case, the ALJ noted that Boycott is "morbidly obese with a BMI of 49.8 and decreased range of motion in the back and multiple joints." (A.R. 47.) She also noted that Dr. Lal found that Boycott has "some soft tissue swelling which was in proportion to the obesity." (Id.) She discussed Dr. Lal's findings that Boycott "does not have claudication," and the "extremities showed no trophic changes, varicosities or ulcerations. There was no clubbing, cyanosis or edema and no wasting or atrophy." (Id.) The ALJ commented that Boycott is able to walk without assistance, that her "grip strength was 3/5 bilaterally but wrists and fingers showed no edema, redness or heat." (Id.) The ALJ also noted that Boycott has some difficulties due to pain. (Id.) The ALJ discussed S.S.R. 02-01p and explained that "someone with obesity and arthritis affecting a weight-bearing joint may have more pain and limitation than might be expected from the arthritis alone." (Id. at 45.) The ALJ's RFC reflected Boycott's obesity by limiting her to only occasional climbing, stooping, crouching, kneeling, bending, and crawling.

Boycott claims that the ALJ's RFC formulation did not sufficiently consider the impact of Boycott's obesity on her capacities for sitting and handling. In her view, the ALJ did not consider her testimony that she is able to sit for a half-hour, at most, and only if the chair is soft. (*See* id. at 17.) Boycott is correct that the ALJ did not specifically address this portion of Boycott's testimony, but she may have discounted it because she found Boycott's credibility compromised—a conclusion that this court does not disturb. But the ALJ did discuss Dr. Lal's observations about Boycott's sedentary lifestyle and her presentation. (Id.

at 47.) The ALJ also relied on Dr Madala's report, which opined that Boycott can sit for 6 hours (id. at 245)—the amount of sitting that is required for sedentary work. *See* S.S.R. 83-10, 1983 WL 31251 at *5 (explaining that in a sedentary job, "sitting should generally total approximately 6 hours of an 8-hour workday"). The ALJ based the RFC on the limitations identified by Doctors Lal and Madala, who specifically measured the impact of Boycott's obesity on her ability to move, sit, and utilize her hands, and her ruling is therefore supported by substantial evidence. *See Kittelson v. Astrue,* 362 Fed.Appx. 553, 559 (7th Cir. 2000) (upholding RFC analysis that did not specifically address impact of claimant's obesity when the ALJ based the RFC on the limitations identified by doctors who had "specifically noted Kittelson's obesity").

### E.  New Evidence

The ALJ rendered her decision on January 4, 2010. While Boycott's request for review was pending before the Appeals Council, she submitted new evidence in support of her claim, including: (1) a September 2010 prescription for a cane, signed by Dr. Skaredoff, her former employer; (2) a list of five prescriptions for hydrocodone dating from July 2010 through December 2010, also authorized by Dr. Skaredoff; (3) a physical evaluation report authored by Dr. Skaredoff in March 2011 which addresses "the period of 9/1/2007 through the present"; (4) and an application for a Persons with Disabilities Parking Placard dated March 10, 2011. (A.R. at 253-54, 257-63). Boycott claims that she is entitled to a remand for consideration of this new and material evidence pursuant to the sixth sentence of 42 U.S.C.

§ 405(g). Of the newly submitted evidence, Boycott developed her argument only as it relates to Dr. Skaredoff's evaluation. (R.17, Pl.'s Reply at 8.) In her view, Dr. Skaredoff's opinion might change the ALJ's decision and there is good cause for not submitting it with her initial application: it did not exist.

A claimant is entitled to a "sentence six" remand under 42 U.S.C. § 405(g) "only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." "For sentence six purposes . . . 'materiality' means that there is a reasonable probability that the Commissioner would have reached a different conclusion had the evidence been considered, and 'new' means evidence not in existence or available to the claimant at the time of the administrative proceeding." *Perkins v. Chater*, 107 F.3d 1290, 1296 (7th Cir.1997) (internal quotations and citations omitted). Here, Boycott claims that Dr. Skaredoff's evaluation is material because it shows that Boycott is not capable of working an 8-hour day. Regardless of whether Dr. Skaredoff's evaluation is material, which this court does not decide, it is not new within the meaning of Section 405(g) because the information in the evaluation existed before Boycott's administrative hearing. Dr. Skaredoff was aware of his impression of Boycott's condition as of September 2007 in September 2007, even though Boycott did not ask him to render an opinion until 2011, after the ALJ had ruled. *See Jens v. Barnhart*, 347 F.3d 209, 214 (7th Cir. 2003) ("Although the report had not yet been written at the time of the ALJ's decision, the information summarized in the report had long been in existence . . . and thus

does not meet the newness requirement of § 405(g)."); *see also Perkins*, 107 F.3d at 1296 ("Even though Dr. Reich's evaluations were technically not in existence at the time of the earlier hearing, he based his conclusions entirely on evidence that had long been available. . . . [T]his derivative evidence . . . does not qualify under sentence six as 'new.'").  As such, Dr. Skaredoff's evaluation does not entitle Boycott to a remand.

## Conclusion

For the foregoing reasons, Boycott's motion for summary judgment is granted insofar as it requests a remand and the Commissioner's motion for summary judgment is denied.

**ENTER:**


_____
**Young B. Kim
United States Magistrate Judge**